A07A0188. STATE OF GEORGIA v. FREE AT LAST BAIL BONDS.

(647 SE2d 402)

MILLER, Judge.

The State appeals from an order requiring that it remit to Free At Last Bail Bonds (the "Surety") 50 percent of the bond amount the Surety had posted on behalf of Ismael Carrion Espinoza. Discerning no error, we affirm.

The facts are undisputed and the issue before us is whether, in finding that the Surety was entitled to a 50 percent remission, the trial court correctly interpreted and applied the relevant statute. This question is one of law, which we review de novo. *Confidential Bonding Co. v. State of Ga.*, 279 Ga. App. 794, 796 (632 SE2d 684) (2006).

The record shows that on September 30, 2004, the Surety posted bond in the Superior Court of Clayton County on behalf of Espinoza in the amount of $7,250. Remittance of the bond was conditioned on Espinoza appearing before the court on January 24, 2005. After Espinoza failed to appear, the trial court issued a rule nisi and, following a hearing, entered a rule absolute ordering the forfeiture of the bond amount plus costs on June 7, 2005. A writ of fieri facias was filed on that judgment on June 10, 2005, and, on July 13, 2005, the Surety paid $7,393.36[1] to the Clayton County Sheriff's Department in satisfaction of the same.

The Surety subsequently located Espinoza and surrendered him to the Clayton County Sheriff's Department on December 15, 2005. On June 7, 2006, the Surety filed a motion for remission of 50 percent of the bond amount. The State sought to dismiss that motion on the grounds that it had not been filed within 120 days after entry of the forfeiture judgment. Following a hearing, the trial court granted the Surety's motion and entered an order requiring the State to remit 50 percent of the bond amount.

---

[1] This amount included the bond amount plus costs of $90.50 and interest of $52.86.

On appeal, the State argues that the trial court misinterpreted and misapplied OCGA § 17-6-72 (d) (1),[2] which provides:

> (d) In cases in which paragraph (3) of this subsection is not applicable,[3] *on application filed within 120 days from the payment of judgment,* the court shall order remission under the following conditions:

> (1) Provided the bond amount has been paid within 120 days after judgment and the delay has not prevented prosecution of the principal and upon application to the court with prior notice to the prosecuting attorney of such application, said court shall direct remission of 95 percent of the bond amount remitted to the surety if the surety locates the principal in the custody of the sheriff in the jurisdiction where the bond was made or in another jurisdiction causing the return of the principal to the jurisdiction where the bond was made, apprehends, surrenders, or produces the principal, if the apprehension or surrender of the principal was substantially procured or caused by the surety, or if the location of the principal by the surety caused the adjudication of the principal in the jurisdiction in which the bond was made. Should the surety, within two years of the principal's failure to appear, locate the principal in the custody of the sheriff in the jurisdiction where the bond was made or in another jurisdiction causing the return of the principal to the jurisdiction where the bond was made, apprehend, surrender, or produce the principal, if the apprehension or surrender of the principal is substantially procured or caused by the surety, or if the location of the principal by the surety causes the adjudication of the principal in the jurisdiction in which the bond was made, the surety shall be entitled to a refund of 50 percent of the bond amount. *The application for 50 percent remission shall be filed no later than 30 days following the expiration of the two-year period following the date of judgment.*

(Emphasis supplied.)

---

[2] Although the State articulates four separate enumerations of errors in its brief each of those enumerations represents a restatement of the single issue on appeal: whether the trial court erred in its interpretation and application of OCGA § 17-6-72 (d) (1).

[3] OCGA § 17-6-72 (d) (3) applies only where a surety has not yet paid the forfeiture judgment.

The State contends that the phrase "on application filed within 120 days from the payment of judgment," found in paragraph (d), controls over the language of subparagraph (d) (1), which requires that a motion for remission of 50 percent of the bond amount "shall be filed no later than 30 days following the expiration of the two-year period following the date of judgment." Thus, the State argues that the trial court erred in finding that OCGA § 17-6-72 (d) (1) allowed the Surety to file an application for remission of 50 percent of the bond amount more than 120 days after the entry of the forfeiture judgment. We disagree.

Our analysis is guided by "[t]he cardinal rule in construing a legislative act, [which] is to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate [that] intent and purpose." (Citation and punctuation omitted.) *Carringer v. Rodgers*, 276 Ga. 359, 363 (578 SE2d 841) (2003). See also OCGA § 1-3-1 (a). A court is usually able to determine legislative intent by reading the statute literally — i.e., by affording the language used its plain and ordinary meaning. See, e.g., *In the Interest of T. H.*, 258 Ga. App. 416, 420 (2) (574 SE2d 461) (2002); OCGA § 1-3-1 (b).

Here, however, a literal reading of OCGA § 17-6-72 (d) (1) reveals an inherent conflict. On the one hand, paragraph (d) appears to say that a surety is entitled to a remission of the bond amount under subparagraph (d) (1) only if it files an application within 120 days of the entry of the forfeiture judgment, even if the principal has been neither located nor surrendered within that time frame. At the same time, subparagraph (d) (1) explicitly provides that a surety may apply for 50 percent remission at any time during the two years and thirty days immediately following the entry of the forfeiture judgment, assuming it locates or surrenders the principal during that time.

In situations such as this, where following the literal language of the statute "produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else . . . the appellate court must then seek to make sense out of the statute, while being faithful to the legislative intent." *Ga. Power Co. v. Monroe County*, 284 Ga. App. 707, 709 (644 SE2d 882) (2007). See also *City of Atlanta v. Miller*, 256 Ga. App. 819, 820 (569 SE2d 907) (2002) ("[S]tatutes are to be construed in accordance with their real intent and meaning and not so strictly as to defeat their legislative purpose, and statutory construction must square with common sense and sound reasoning.") (citations and punctuation omitted).

"To define the legislative intent, the court considers the purpose of the statute and its impact on the body of law as a whole. The court also considers the law as it existed before the statute was passed and

identifies the mischief sought to be corrected." (Citation and punctuation omitted.) *Sizemore v. State*, 262 Ga. 214, 216 (416 SE2d 500) (1992). See also *Collins v. American Tel. &c. Co.*, 219 Ga. App. 196, 199 (4) (464 SE2d 642) (1995) (legislature's amendment of statute to add new language is evidence that the statute did not previously contemplate that subject). Here, the purpose of the statute is "remedial . . . and must therefore be construed in favor of the surety." (Citation and punctuation omitted.) *Osborne Bonding & Surety Co. v. State of Ga.*, 224 Ga. App. 590, 591 (481 SE2d 578) (1997). Moreover, as is explained below, the history of OCGA § 17-6-72 indicates that the legislature did not intend for the 120-day filing requirement to apply to motions for 50 percent remission.

In *State of Ga. v. Hightower*, 199 Ga. App. 770 (406 SE2d 117) (1991), this Court was called upon to interpret the statutory predecessor to what is now OCGA § 17-6-72 (d).[4] That version of the statute contained language that is virtually identical to the current language, with two exceptions. First, the law required an application for remission to be filed within 90 days following the entry of the forfeiture judgment. Second, the statute did not contain the language providing that a motion for 50 percent remission "shall be filed no later than 30 days following the expiration of the two-year period following the date of judgment."

In the absence of that language, this Court held that to receive a 50 percent remission, a surety was required to file an application within 90 days following the forfeiture judgment, even if the surety had not located or surrendered the principal during that time. *Hightower*, supra, 199 Ga. App. at 771. Implicitly recognizing the anomaly created by the statute, this Court invited the legislature to amend the law. Id. The following year the legislature accepted that invitation, and added what is now the last sentence of OCGA § 17-6-72 (d) (1). See Ga. L. 1992, p. 2933, § 4.

In light of the amendment of the statute following our decision in *Hightower*, we must conclude that the legislature intended to allow a surety to file an application for 50 percent remission at any time during the two years and thirty days following the entry of the forfeiture judgment. This conclusion is supported by the presumption that the legislature did not intend "to enact meaningless language." *Osborne Bonding*, supra, 224 Ga. App. at 591. We must therefore interpret the statute as a whole, striving "to make all its parts harmonize and to give a sensible and intelligent effect to each part," *Brown v. Liberty County*, 271 Ga. 634, 635 (522 SE2d 466) (1999), and to "avoid constructions that make some language mere surplusage."

---

[4] The former OCGA § 17-6-72 (f).

*Osborne Bonding*, supra, 224 Ga. App. at 591. The statutory interpretation advocated by the State in this case would render the last sentence of OCGA § 17-6-72 (d) (1) meaningless. To avoid treating that language as "mere surplusage," therefore, we must conclude that the 120-day filing requirement does not apply to applications for 50 percent remission.

In light of the foregoing, we find that under OCGA § 17-6-72 (d) (1), a surety may be entitled to a remission of 50 percent of the bond amount where it files the application for remission at any time within "30 days following the expiration of the two-year period following the date of judgment." We therefore affirm the judgment of the trial court ordering the State to remit to the Surety 50 percent of the bond amount it had posted on behalf of Espinoza.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED JUNE 7, 2007.

*Jewel C. Scott, District Attorney, Harry A. Osborne*, for appellant. *Leeza R. Cherniak*, for appellee.